**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Michael M. Mills</u>

     **v.**                                          **Civil No. 03-136-B**

<u>Merrimack Police Department, et. al.</u>


<u>**AMENDED
MEMORANDUM AND ORDER**</u>

Michael Mills brings this civil rights lawsuit challenging aspects of the police investigation into his alleged involvement in prostitution.  His amended complaint asserts claims of malicious prosecution (Count 1), theft (Count 2), negligent hiring, training and supervision (Count 3), slander (Count 4), illegal search and seizure of personal property (Count 5), illegal search and seizure of a vehicle (Count 6), illegal wire tapping (Count 7), invasion of privacy (Count 8), false swearing (Count 9), negligence (Count 10), and mental suffering (Count 11).  The defendants move for summary judgment with respect to all counts.  For the reasons discussed below, I grant defendants' motions.

## I.   __BACKGROUND__[1]

The police investigation into Michael Mills' activities began when the Nashua Police Department received an anonymous letter, which it passed on to Detective Poirier in the Merrimack Police Department.  The letter, dated February 1, 2002, described the experience of the writer's niece.  The author claimed that her niece had responded to a newspaper advertisement for a flower and balloon delivery job only to find herself being interviewed for what appeared to be a prostitution and stripper service.  She identified the telephone number listed in the advertisement as 424-2424.  She also stated that the person who had conducted the interview lived in Merrimack, New Hampshire, referred to himself as "Mike," and had whitish hair.

Poirier discovered while investigating the letter writer's allegations that Mills, who has blue eyes and whitish hair, used a similar telephone number (424-2442) for a business he operated in Merrimack under the name "Bikini Grams."  A Yellow Pages advertisement for the business stated "BALLOONS Delivered with

---

[1]   All facts, unless otherwise noted, are taken from the Amended Complaint or the Plaintiff's Memorandum of Law in Objection to Defendants' Motion for Summary Judgment (hereinafter Pl.'s Obj. Def.'s Mot. Summ. J.).

Style and Always with FUN! BACHELOR/ETTE PARTIES Hot & Sexy We Do It All!"

Poirier obtained additional information about the Bikini Grams business from a confidential informant who had previously provided Poirier with information that had led to arrests in an unrelated case.  The informant claimed that Bikini Grams was a front for a prostitution business and that the informant was personally aware that several of Mills' employees were doing "full service" calls.

Poirier also enlisted Officer Keeley Grise to contact Mills in an undercover capacity.  Posing as a job applicant, Grise met Mills at his home for a job interview wearing a body wire. Mills offered Grise employment options that ranged from providing "G to R rated" flower and balloon delivery service to performing lingerie and exotic dance shows.  He also told her that she could perform sexual acts for tips, and showed her photographs of the women working for him in various stages of undress.  He stated that if a client requested sexual intercourse, his assistant arranged it and he received a "cut."  When Mills asked Grise to remove her clothes, the officers monitoring the encounter called her on her cell phone to provide her with an excuse to end the

-3-

interview.

Poirier relied on this information in obtaining warrants to search Mills' residence and arrest him.  The search warrant authorized the police to seize "ledgers and appointment books, receipts and contracts, check books and bank statements, U.S. currency, stocks and bonds, certificates of deposit, telephone bills and utility statements, credit card receipts, tax documents, titles, photographs and videotapes, safety deposit keys, as well as computers and related peripherals."  (Pl.'s Obj. Mot. Summ. J. Ex. 13).

The arrest warrant was filled out incorrectly.  Although the affidavit Poirier produced in support of his request for a warrant identified Michael Mills as the target and the arrest warrant itself identified the object of the complaint as Michael Mills, the name of the person authorized to be arrested was incorrectly listed as Wilber Anderson.  Poirier corrected this error after the judge signed the warrant and before it was executed.

The police seized a number of items from Mills' residence, including a binder with photographs and information about employees, files with paperwork, keys, a computer, a duffle bag

-4-

containing "sex related items," and a large amount of U.S. currency.  Mills was given a copy of the warrant and an inventory of seized items.

Mills arrived at the house during the search and was arrested.  His vehicle was impounded and towed.  Poirier obtained a warrant to search the vehicle on March 4, 2002, and the warrant was executed the next day.  The car's vehicle identification number was listed incorrectly on the warrant.

Mills was charged with five counts of prostitution in Merrimack District Court.  Mills filed a motion in that case seeking to compel the police to either return certain items that the police allegedly had seized during the search of his home or pay damages for items that were lost or damaged.  In particular, Mills sought to compel the police to return $508, two audio cassettes, a calculator, and the contents of 23 files.  He also sought compensation for a damaged computer keyboard.  The court denied his motion.  The charges against Mills ultimately were dismissed after he entered a nolo contendere plea to a charge of disorderly conduct.

Police Chief Devine gave an interview to a local newspaper in which he claimed that the police had given Mills $508 more

-5-

than he was entitled to when they refunded the money that they had seized from his home.  Devine claimed that while police records indicated that $3,106 had been seized, the actual amount was only $2,508.  The newspaper article describing Devine's interview states:  "[a]s a result, Devine said, Mills got $508 more than he should have because of a clerical error.  And now that he's been cut the check, '[h]e's not going to come forward and tell us that there was actually only $2,508.'"  Months later, the police discovered approximately $500 in an envelope in the police evidence room that could not be attributed to any other investigation.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  <u>See</u> <u>id.</u> at 248.

In ruling on a motion for summary judgment, I construe the evidence in the light most favorable to the nonmovant.  <u>See</u> <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2001).  The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 94 (1st Cir. 1996) (citing <u>Celotex</u>, 477 U.S. at 323; <u>Anderson</u>, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment.  <u>See</u> <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 236-37 (1st Cir. 2002).

### III.  **ANALYSIS**

Mills challenges a variety of actions taken by various police officers.  He has also sued the police chief and the department.  I discuss each of his claims in turn.

### A.  **The Investigation**

Mills asserts that Officer Grise violated New Hampshire law by wearing a body wire when she entered his residence posing as a job applicant.  I disagree.  New Hampshire law prohibits police officers from using wire taps without judicial authorization except when investigating a specific set of crimes.  N.H. Rev. Stat. Ann. § 570-A:2 II(c).  One of those crimes is "organized crime," which the statute defines in part as "unlawful activities of the members of a highly organized, disciplined association engaged in supplying goods and services, including, but not limited to . . . prostitution."  N.H. Rev. Stat. Ann. § 570-A:1 XI.  Here, Poirier and Grise were seeking to determine whether Mills was running a prostitution organization involving a number of employees.  Grise therefore did not violate New Hampshire law by wearing a body wire.  I therefore grant defendants' motion for summary judgment as to Count 7.

-8-

## B.  **Mills' Arrest**

Mills asserts that his arrest was illegal and constituted malicious prosecution.[2]  The state law tort of malicious prosecution requires a showing that the plaintiff was "'subjected to a criminal prosecution instituted by the defendant without probable cause and with malice,' [terminating in the plaintiff's] favor."  State v. Rollins, 129 N.H. 684, 687 (1987)(quoting Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973).[3]  Probable cause exists when "the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense."  Hartgers v. Town of Plaistow, 141

---

[2]  Mills has not sued the attorneys or office that actually prosecuted him.  He has sued only the police officers and department.

[3]  To the extent Mills asserts a § 1983 claim for malicious prosecution, it fails.  New Hampshire provides an adequate remedy for the common law tort of malicious prosecution.  MacRae v. Brant, 108 N.H. 177 (1967).  The availability of this state law remedy defeats any procedural due process claim for malicious prosecution.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail");  Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("[a] § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action").

N.H. 253, 255 (1996) (internal quotations and citations omitted);

United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987).

The defendants had ample cause to arrest and prosecute Mills.  Poirier had obtained information from multiple sources indicating that Mills was operating a prostitution business. Further, Officer Grise went into Mills' home in an undercover capacity and had a conversation with him in which he informed her that he provided men with women for sexual purposes in return for a fee.  These facts amply justify defendants' decisions to arrest and prosecute Mills.  Accordingly, I grant defendants' motion for summary judgment with respect to Count 1.

**C.   The Searches of Mills' Home and Vehicle**

The same facts that justify Mills' arrest also justify the search of his residence.  Because the police had probable cause to believe that Mills was running an illegal prostitution business from his home, they were justified in obtaining a warrant to search his residence and seize any item that could serve as evidence of his prostitution business.  The police thus were entitled to seize any computers, business or tax related paperwork, appointment books, address books, sexual toys or related items, money which could be from illicit sources,

photographs which might be of clients or employees, and other similar items that they reasonably believed were related to the prostitution business.  I therefore grant summary judgment as to Count 5.

Mills also charges that the police unlawfully seized and searched his vehicle.  He claims that the police:  (1) lacked probable cause to seize the vehicle; (2) improperly entered the vehicle before obtaining a warrant; and (3) unjustly waited four days after searching the vehicle to obtain a warrant.  All of these arguments lack merit.

The police had probable cause to seize and impound Mills' vehicle until a warrant to search it could be obtained because a police officer looked into the vehicle while he was lawfully on Mills' property and saw a three-ring binder in plain view that was similar to another binder containing naked pictures of Mills' employees that the police had previously seized during the search of Mills' home.  This observation, when coupled with the other information that was then available to the police, gave Poirier probable cause to seize and search Mills' vehicle.  Having obtained probable cause to seize and search the vehicle, the police were justified in impounding it until a warrant could be

obtained.  Moreover, a delay of four days in obtaining a warrant
was not unreasonable under the circumstances.  See Ex parte Boyd,
542 So. 2d 1276 (Ala. 1989) (four day delay in securing warrant
to search impounded vehicle not unreasonable).[4]

I do not find a triable issue of fact in whether defendants
entered the vehicle unlawfully prior to obtaining a warrant.
Mills has provided an affidavit from his wife asserting that she
saw a police officer in the back seat of the car on the evening
of February 28.  Poirier stated in his deposition that if an
officer entered the car it would have been to drive it onto the
street to permit it to be towed from the scene.  Even if Mills'
wife were correct, however, the officers would not have acted
improperly.  A warrantless search on the spot would have been
justified under the automobile exception to the Fourth
Amendment's warrant requirement.  See Maryland v. Dyson, 527 U.S.
465, 466-67 (1999).  I therefore grant summary judgment with
respect to Counts 6 and 8.

---

[4] The fact that the warrant to search the vehicle contained
an incorrect vehicle identification number is inconsequential
under the circumstances of this case because there was no doubt
about the identity of the vehicle that was the subject of the
warrant.  Thus, I reject any claim for damages that Mills asserts
on this basis.

**D.  Retention of Seized Items**

Mills asserts that the defendants failed to return certain
property that they had seized during the search of his home.
This claim is barred by res judicata.  For res judicata to
attach, "(1) the parties must be the same or in privity with one
another; (2) the same cause of action must be before the court in
both instances; and (3) a final judgment on the merits must have
been rendered on the first action."  Butland v. Dep't of Corr.,
229 F. Supp. 3d 75 (D.N.H. 2002).

Mills received an order in his criminal case on June 3,
2002, requiring the police to return his property.  He later
filed a motion to enforce the June 3 order which addressed the
same property that is at issue in his current claim.  The
Merrimack District Court heard testimony on the matter and denied
Mills' motion, finding that for each item, Mills either failed to
prove that the item had been taken, failed to prove that the item
was not returned, failed to prove that the item had been damaged,
or failed to prove that he had not already been compensated for
the item.  Since the criminal case ended when Mills entered his
nolo contendere plea, that decision is now final.  All the
elements of res judicata are satisfied and I therefore grant

-13-

defendants' motion for summary judgment as to Count 2.

**E.   Slander**

Mills claims that Police Chief Devine slandered him when he told a newspaper reporter that: (1) Mills was not entitled to a portion of the money that the police department had disbursed to him; and (2) that Mills was unlikely to return the money.

Defamation consists of a "fail[ure] to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party." Pierson v. Hubbard, 147 N.H. 760, 763 (2002) (internal citation omitted). "To be defamatory, language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." Touma v. St. Mary's Bank, 142 N.H. 762, 765 (1998). Furthermore, "a statement in the form of an opinion may be read to imply defamatory facts, and it is actionable if it is actually understood that way." Duchesnaye v. Munro Enters., 125 N.H. 244, 249 (1984).

The first statement on which Mills bases his claim -- that Mills received more than his due because of an accounting error -- did not defame Mills because it could not lower him in the esteem of any group. The second statement -- that Mills was

-14-

unlikely to return the money -- was not defamatory because it was merely an opinion.  Defendants thus are entitled to summary judgment on Count 4, Mills' slander claim.[5]

**F.   False Testimony**

Mills asserts that Poirier knowingly and willfully gave false or misleading responses in his May 22, 2002 deposition, and that Poirier and Roy both testified falsely under oath at a September 10, 2002 hearing at the Merrimack District Court.   I reject these claims because Poirier and Roy are entitled to absolute immunity for any testimony they gave in court.  See Briscoe v. LaHue, 460 U.S. 325 (1983).  I therefore grant summary judgment as to Count 9.

**G.   Remaining Claims**

Mills alleges that the Merrimack Police Department negligently hired, trained, and supervised its officers.  He also asserts that the individual defendants failed to exercise

---

[5]   To the extent that Mills also asserts a civil rights violation based on the same conduct, he has failed to state a viable claim for relief.  See Paul v. Davis, 424 U.S. 693, 702 (1976) (there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment").

reasonable care in carrying out their duties.  As I have already explained, the defendants acted lawfully in investigating Mills, searching his home and vehicle, and prosecuting him.  Because the individual defendants did not violate Mills' constitutional rights, the police department cannot be held liable on any claim for negligent hiring, training, or supervision based on 42 U.S.C. § 1983.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Further, while defendants made certain inconsequential errors in preparing the arrest and search warrants and may well have failed to initially return all of the money that they seized from Mills' home, these errors did not injure Mills, and thus will not support an actionable state law negligence claim. Mills' separate claim for mental suffering fails for similar reasons.  Accordingly, I grant summary judgment with respect to Counts 3, 10 and 11.

Finally, to the extent Mills' complaint is based on his perception that another similar business has not as yet been prosecuted to the same extent as his own, he has not alleged unequal treatment under the law based on an impermissible motive, and therefore, he has no civil rights claim.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, I grant summary judgment for the defendants on all counts.  (Doc. Nos. 34 and 36).  All other pending motions are thus rendered moot.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


May 11, 2004

cc:  William G. Scott, Esq.
     Scott A. Ewing, Esq.
     Michael M. Mills